**KNEUPPER & COVEY, PC**
Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
17011 Beach Blvd., Ste. 900
Huntington Beach, CA 92647
Tel: (657) 845-3100

*Attorneys for Plaintiffs Marko Keeme
And Tari Keeme*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKO KEEME and TARI KEEME,<br><br>                              Plaintiffs,<br><br>v.<br><br>NRG RESIDENTIAL SOLAR SOLUTIONS LLC, SPRUCE POWER 3, LLC, KWS SOLAR TERM PARENT 1 LLC, KWS SOLAR TERM PARENT 2, LLC, and KWS SOLAR TERM PARENT 3, LLC,<br><br>                              Defendants. | Case No.: **'24CV0567 TWR AHG**<br><br>**COMPLAINT FOR:**<br>(1)  Fraud;<br>(2)  Breach of Contract;<br>(3)  Violation of the Song-Beverly Consumer Warranty Act;<br>(4)  Breach of Express Warranty;<br>(5)  Violation of the Magnuson-Moss Warranty Act;<br>(6)  Violation of Cal. Bus. & Profs. Code § 7160;<br>(7)  Violation of Unfair Competition Law;<br>(8)  Violation of False Advertising Law;<br>(9)  Violation of Consumer Legal Remedies Act; and<br>(10) Negligent Hiring.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Marko Keeme and Tari Keeme, by and through the undersigned counsel, hereby file this Complaint against Defendants NRG Residential Solar Solutions LLC ("NRG"), Spruce Power 3, LLC, KWS Solar Term Parent 1 LLC, KWS Solar Term Parent 2 LLC, and KWS Solar Term Parent 3 LLC (collectively the "Spruce") and allege as follows:

### JURISDICTION AND VENUE

1.     This Court has subject-matter jurisdiction in this case under 28 U.S.C. § 1332(a) because there is complete diversity among the parties and the amount in controversy exceeds $75,000. Alternatively, this Court has jurisdiction in this case because this case arises out of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, over which this Court has subject-matter jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367 with respect to Plaintiffs' claims arising under state law.

2.     This Court has specific personal jurisdiction over Defendant NRG Residential Solar Solutions LLC because NRG Residential Solar Solutions LLC has sufficient minimum contacts with the State of California, has purposely availed itself of the benefits and protections of California law, and conducts a substantial amount of business in the State of California including by contracting with California residents, such that the Court's exercise of personal jurisdiction over NRG Residential Solar Solutions LLC is reasonable and comports with due process.

3.     This Court has specific personal jurisdiction over Defendant Spruce Power 3, LLC because Spruce Power 3, LLC has sufficient minimum contacts with the State of California, has purposely availed itself of the benefits and protections of California law, and conducts a substantial amount of business in the State of California including by contracting with California residents, such that the Court's exercise of personal jurisdiction over Spruce Power 3, LLC is reasonable and comports with due process.

4.     This Court has specific personal jurisdiction over Defendant KWS Solar Term Parent 1 LLC because KWS Solar Term Parent 1 LLC has sufficient minimum contacts

with the State of California, has purposely availed itself of the benefits and protections of California law, and conducts a substantial amount of business in the State of California including by contracting with California residents, such that the Court's exercise of personal jurisdiction over KWS Solar Term Parent 1 LLC is reasonable and comports with due process.

5.     This Court has specific personal jurisdiction over Defendant KWS Solar Term Parent 2 LLC because KWS Solar Term Parent 2 LLC has sufficient minimum contacts with the State of California, has purposely availed itself of the benefits and protections of California law, and conducts a substantial amount of business in the State of California including by contracting with California residents, such that the Court's exercise of personal jurisdiction over KWS Solar Term Parent 2 LLC is reasonable and comports with due process.

6.     This Court has specific personal jurisdiction over Defendant KWS Solar Term Parent 3 LLC because KWS Solar Term Parent 3 LLC has sufficient minimum contacts with the State of California, has purposely availed itself of the benefits and protections of California law, and conducts a substantial amount of business in the State of California including by contracting with California residents, such that the Court's exercise of personal jurisdiction over KWS Solar Term Parent 3 LLC is reasonable and comports with due process.

7.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**PARTIES**

8.     Marko and Tari Keeme are California residents.

9.     Defendant NRG is a Delaware limited liability corporation with its principal place of business at 804 Carnegie Center, Princeton, NJ 08540.

10.     Defendant Spruce Power 3, LLC is a Delaware limited liability corporation with its principal place of business at 820 Gessner Rd., Suite 500, Houston, TX, 77024.

11.     Defendant Spruce Power 3, LLC is a Delaware limited liability corporation with its principal place of business at 820 Gessner Rd., Suite 500, Houston, TX, 77024.

12.     Defendant KWS Solar Term Parent 1 LLC is a Delaware limited liability corporation with a principal place of business at 2900 North Loop West Floor 3, Houston, TX 77092.

13.     Defendant KWS Solar Term Parent 2 LLC is a Delaware limited liability corporation with a principal place of business at 2900 North Loop West Floor 3, Houston, TX 77092.

14.     Defendant KWS Solar Term Parent 3 LLC is a Delaware limited liability corporation with a principal place of business at 2900 North Loop West Floor 3, Houston, TX 77092.

## FACTUAL ALLEGATIONS

15.     Marko and Tari Keeme are California consumers who entered into a lease for a solar energy system from NRG Residential Solar Solutions LLC on October 22, 2014. The Keemes agreed to lease the solar energy system after speaking with Trisha Bates, a salesperson from NRG, regarding the benefits of having such a system on their home. As specifically represented to the Keemes, those benefits included, a guaranteed rate of solar energy production and that NRG would select installers and contractors who would complete the installation and repair in a professional and workmanlike fashion.

16.     Ms. Bates made these representations during an in-person with the Keemes at their home on or around October 22, 2014.

17.     Based on those representations, the Keemes entered into the lease of the solar energy system (the "Solar Agreement").

18.     Under the Solar Agreement, the Keemes would make monthly payments to NRG of $205.33 plus tax for 240 months, for a total of $49,279.20. The lease price included NRG's selection of the materials and installer for the solar energy system, monitoring of the system, responsibility to repair the system, and to ensure that the system produced the amounts of electricity set forth in the Performance Guarantee or, if the system did not

produce the guaranteed amount, give the Keemes a specified Performance Credit. NRG owned the system components, while the Keemes owned the energy the system produced.

19.     In the Solar Agreement, NRG provided various written warranties. First, NRG provided a warranty on the installation and use of the system that would last for the entire term of the lease. This warranty provided that the system "is of good quality, is new when installed, and is constructed and installed in a good workmanlike manner according to Prudent Solar Practices" and "against any defect or deficiency in workmanship." Second, for five years, NRG warranted against damage to the Keemes' roof from the installation of the solar energy system, warranting that "each roofing penetration made in connection with installing the Solar System, and the surrounding area within a five (5) inch radius of each penetration, against damage to the roof and against water infiltration through the roof." Third, if the Keemes had the solar energy panels removed, NRG warranted against damage, including water infiltration, caused by its repair of the roof penetrations. Fourth and finally, NRG provided a catch-all warranty lasting the entirety of the lease term for damage to the Keemes' property and belongings caused by NRG or the contractors it selected: "We warrant the Solar System and installation and repair work by us and our designated contractors against damage to your Property and belongings." NRG promised to repair any damages covered by that warranty or pay the Keemes the cost to fix that damage. The Limited Warranty makes plain that it is assumed by NRG's successors or assigns.

20.     The Solar Agreement also included a "Performance Guarantee." Under the Performance Guarantee, NRG promised that "as of each anniversary of the Production Date, the Solar System will have produced Actual Power . . . greater than or equal to the corresponding Guaranteed Power," which the Solar Agreement went on to define in a separate table. If the solar energy system did not meet the Performance Guarantee, NRG was to provide the Keemes with a "Performance Credit" equal to "(i) the difference in kWh between the Guaranteed Power and the corresponding Actual Power, multiplied by (ii) $ 0.211 [the contractually estimated price per kWh of electricity], minus (iii) the sum of all prior Performance Credits."

21.    NRG's selected installer claimed to have completed the installation of the system in or around October or November 2014.

22.    In December 2019, the Keemes noticed that half of the panels in their solar energy system had stopped producing energy. The Keemes contacted NRG to report the issue. NRG eventually promised to give the Keemes a Performance Credit for the months that the solar energy system was not working properly. NRG did not, however, do anything to fix the nonfunctioning panels. The Keemes repeatedly contacted NRG to request that it fix the defective panels, but NRG took no action to fix the panels. Notwithstanding the contractual Performance Guarantee and its prior representation, NRG never provided the Keemes with the credit it promised them for the period when the panels were down.

23.    In February 2021, the Keemes learned that Spruce had acquired NRG's solar energy assets, including their lease. According to Spruce Power 3, LLC's registration statement, it is wholly owned and governed by KWS Solar Term Parent 1 LLC, KWS Solar Term Parent 2 LLC, and KWS Solar Term Parent 3 LLC. On information and belief, KWS Solar Term Parent 1 LLC, KWS Solar Term Parent 2 LLC, and KWS Solar Term Parent 3 LLC are the alter egos of Spruce Power 3, LLC such that they exercise dominion and control over Spruce Power 3, LLC and have a unity of interest. After assuming control over NRG's solar energy assets, Spruce and NRG collectively were the Keemes' solar provider and have all the same rights and obligations that NRG had under the Solar Agreement.

24.    In accordance with the Solar Agreement's assignment of NRG's warranty obligations to any successor, the Keemes reached out to Spruce to see whether it would send someone to fix the panels. The Keemes also reminded Spruce about the credit that NRG promised, which by that time should have amounted to $4,434.18. During those discussions, Spruce analyzed the Keemes' production and admitted that "[the Keemes] are correct that . . . [the] system was not producing." Even with the admission that the solar energy system did not meet the Performance Guarantee, Spruce refused to provide the Keemes with a Performance Credit.

25.    In April 2021, Spruce finally selected and sent contractors to satisfy its contractual duty to repair the dormant panels on the Keemes' home. In the course of reinstalling the panels, however, Spruce's selected contractors likely caused significant damage to the Keemes' home.

26.    In early-2023, the Keemes noticed unusual water deposits on their ceilings beneath where the solar panels sat on their roof. *See* Figure 1.



*Fig. 1.*

27.    The Keemes notified Spruce that the reinstallation that Spruce had arranged had caused damage to their home. Spruce refused to fix the problem.

28.    In April 2023, the Keemes discovered that, while fixing the nonfunctioning panels, Spruce's contractor had failed to replace broken tiles on their roof directly above where the Keemes' ceiling was filing with water. Instead, Spruce's designated service company appeared to have tried to repair the broken tiles with caulk, which left the tiles vulnerable to the water intrusion that would eventually make its way into the ceiling above the Keemes' dining room table. *See* Figure 2.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Fig. 2.*

29.    Fixing Spruce's poor workmanship cost the Keemes at least $21,000.00.

30.    On May 17, 2023, after months of dissembling and stringing the Keemes along regarding their Performance Credit, Spruce informed them that it would not honor the Limited Warranty and compensate them for the system's underperformance.

31.    As of the date of this Complaint, neither NRG nor Spruce has provided the Keemes with the credit to which they were entitled when the system failed to meet the production guarantees.

32.    On December 28, 2023, Plaintiffs commenced an arbitration before the American Arbitration Association under the arbitration provision of the Solar Agreement (the "Arbitration").

33.    On February 16, 2024, the AAA advised the parties that it would not administer the arbitration because the arbitration provision in the Solar Agreement was prohibited by California Code of Civil Procedure § 1284.3(a) insofar as the arbitration provision required that Keemes pay the Defendants attorneys' fees if the Defendants prevailed in the Arbitration.

34.    On March 25, 2024, the AAA advised the parties that it could not administer the Arbitration because the arbitration provision was inconsistent with California law and administratively closed the file.

FIRST CAUSE OF ACTION – FRAUD

35.    In connection with the Solar Agreement, NRG represented to the Keemes that the solar energy system would produce a guaranteed amount of electricity and that NRG would select installers and contractors who would complete the installation and repair in a professional and workmanlike fashion.

36.    NRG made these representations through its salesperson Trisha Bates during in-person conversations with the Keemes at their home on or around October 22, 2014.

37.    The above representations were false insofar as (i) the Keemes' solar energy system failed to produce the promised amount of energy for more than fifteen months and (ii) NRG and Spruce did not select contractors who would perform the installation and repair of the solar energy system in a professional and workmanlike manner.

38.    The misrepresentations also were material. The entire purpose of the Solar Agreement was to furnish the Keemes with a functioning home solar energy system that would produce solar energy and they would not have entered into the Solar Agreement if they knew that NRG and Spruce would arrange and conduct the installation and repairs in a way that jeopardized their home.

39.    The misrepresentations were intended to induce the Keemes into entering into the Solar Agreement and were made with the intent to induce the Keemes into leasing the solar energy system.

40.    NRG and Spruce made the above misrepresentations of past or existing facts knowingly or intentionally.

41.    The Keemes were in fact deceived by the above misrepresentations and chose to lease the solar energy system because of these misrepresentations.

42.    NRG and Spruce's misrepresentations proximately caused damage to the Keemes, including by causing them to incur additional expenses for their home energy needs and causing damage to their home.

43.    The Keemes have suffered substantial damage as a result of their being deceived by the false representations of NRG and Spruce as set forth above.

1

**SECOND CAUSE OF ACTION – BREACH OF CONTRACT**

2

44.    The Keemes entered into a contact with NRG for the lease of a home solar

3

energy system on October 22, 2014.

4

45.    The Keemes performed all obligations under the Solar Agreement.

5

46.    Under the Solar Agreement, NRG and Spruce promised that if the Keemes'

6

system failed to produce at the guaranteed amount, the Keemes would receive a

7

"Performance Credit" to compensate them for the system's deficiency in an amount equal

8

to "(i) the difference in kWh between the Guaranteed Power and the corresponding Actual

9

Power, multiplied by (ii) $ 0.211 [the contractually estimated price per kWh of electricity],

10

minus (iii) the sum of all prior Performance Credits."

11

47.    The solar energy system did not meet the Performance Guarantee for a period

12

of at least fifteen months when half of the panels were nonoperational.

13

48.    The Keemes promptly reported the system's deficiencies to NRG and Spruce

14

and requested that they receive the Performance Credit as outline in the Solar Agreement.

15

49.    NRG and Spruce failed or refused to supply the Keemes with the Performance

16

Credit in violation of the Solar Agreement.

17

50.    The Keemes have suffered substantial damage as a result of NRG and

18

Spruce's breach of contract as set forth above.

19

**THIRD CAUSE OF ACTION – VIOLATION OF THE SONG-BEVERLY CONSUMER**

20

**WARRANTY ACT**

21

51.    Under California Civil Code section 1793, "a manufacturer, distributor, or

22

retailer, in transacting a sale in which express warranties are given, may not limit, modify,

23

or disclaim the implied warranties guaranteed by this chapter to the sale of consumer

24

goods."

25

52.    NRG and Spruce are "retailer[s]" as that term is used in California Civil Code

26

section 1791(l) because they are entities "that engage[] in the business of selling or leasing

27

consumer goods to retail buyers."

28

53.    The Solar Agreement included an express warranty that was designated as a "Limited Warranty."

54.    Because NRG and Spruce gave the Keemes an express warranty when leasing the system, it could not disclaim any implied warranties. *See* Cal. Civ. Code § 1793.

55.    California Civil Code Section 1792 provides in relevant part: "Unless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable."

56.    The solar energy system is a "consumer good" within the meaning of California Civil Code section 1791(a) because it was a new product acquired "primarily for personal, family, or household purposes" and is neither clothing nor a consumable. *See* Cal. Civ. Code § 1791(a).

57.    The Keemes are "buyer[s]" within the meaning of California Civil Code section 1791(b) because they are individuals who leased a consumer good "from a person engaged in the business of . . . distributing, or selling consumer goods at retail." *See* Cal. Civ. Code § 1791(b).

58.    The transaction for the solar energy system occurred in California.

59.    The Solar Agreement contains an "express warranty" within the meaning of California Civil Code section 1791.2(a)(1) because it includes: "written statement[s] arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance." *See* Cal. Civ. Code § 1791.2(a)(1).  The duration of the express warranty is twenty years and, by extension, the duration of the implied warranties of merchantability and of fitness for a particular purpose also are twenty years.

60.    The implied warranty of merchantability establishes minimum standards: "Goods to be merchantable must be at least such as (a) Pass without objection in the trade under the contract description; and (b) In the case of fungible goods, are of fair average

quality within the description; and (c) Are fit for the ordinary purposes for which such goods are used; and (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) Are adequately contained, packaged, and labeled as the agreement may require; and (f) Conform to the promises or affirmations of fact made on the container or label if any." Cal. Comm. Code § 2314(2).

61.   NRG and Spruce breached the implied warranty of merchantability by providing to the Keemes a solar system that was not fit for the ordinary purposes for which such goods are used insofar as it was not fit for the purpose of producing electricity usable to the Keemes for at least fifteen months.

62.   NRG and Spruce breached the implied warranty of merchantability by providing to the Keemes a solar system that would not pass without objection in the trade under the contract description because it was inoperative for at least fifteen months.

63.   The Keemes have been damaged by NRG and Spruce's breach of the implied warranty of merchantability because they were forced to pay higher utility bills than they would have paid if the system was merchantable.

64.   Before entering the Solar Agreement, the Keemes indicated to NRG that the particular purpose for which they were acquiring the System was the production of electrical energy that they could use to power their home and, consequently reduce their utility bills.

65.   NRG was a "retailer" of solar energy systems and, at the time it entered the Solar Agreement with the Keemes, it had reason to know that she required the System for the particular purpose of generating electrical energy they could use to power their home.

66.   The Keemes have no expertise in solar energy or solar panels and were relying on NRG's skill or judgment in selecting or furnishing suitable goods such that they would be able to use the system they were leasing for the particular purposes for which they were leasing it.

67.    The solar energy system NRG leased to the Keemes was not fit for the particular purposes of producing electrical energy with which Ms. the Keemes could power their home.

68.    The Keemes have been damaged by NRG and Spruce's breach of the implied warranty of fitness for a particular purpose because they were forced to pay higher utility bills than they would pay if the system were fit for the purpose for which they acquired it.

69.    As alleged herein, NRG and Spruce breached their obligations under the implied warranties of merchantability and of fitness for a particular purpose and, in so doing, have damaged the Keemes. The Keemes may therefore bring a claim under California Civil Code section 1794.

70.    Additionally, if the Keemes prevail on their Song-Beverly Consumer Warranty Act claims, they "shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred" in connection with such action. *See* Cal. Civ. Code § 1794(d).

**FOURTH CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY**

71.    The "Limited Warranty" presented by NRG constitutes an express warranty under California law and Federal law.

72.    The Keemes reasonably relied on the "Limited Warranty" in leasing the solar energy system from NRG and Spruce and the "Limited Warranty" was part of the basis of the Keemes' bargain with NRG.

73.    The Keemes promptly notified NRG and Spruce of a claim under the warranty within the warranty period.

74.    The Keemes provided NRG and Spruce with an opportunity to satisfy their warranty claim.

75.    NRG and Spruce have failed to honor the Limited Warranty. Specifically, NRG and Spruce (i) failed to compensate the Keemes for the system's failure to reach the

performance guarantee and (ii) failed to repair the damage done to the Keemes' roof or pay the Keemes for the value of such damage.

76.    The Keemes have been damaged by NRG and Spruce's breach of express warranty as their roof and house have been damaged and their solar energy system was nonoperational for at least fifteen months.

**FIFTH CAUSE OF ACTION – VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

77.    The solar energy system that the Keemes leased is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act because it is "tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes." 15 U.S.C. § 2301(1).

78.    The Keemes are "consumer[s]" within the meaning of the Magnuson-Moss Warranty Act because they were "[lessors]. . . of [a] consumer product." 15 U.S.C. § 2301(3); *see also* Final Action Concerning Review of Interpretations of Magnuson-Moss Warranty Act, 80 Fed. Reg. 42,715 (July 20, 2015) (promulgating the FTC interpretation applying Magnusson-Moss to consumer leases).

79.    NRG and Spruce were "supplier[s]" within the meaning of the Magnuson-Moss Warranty Act because they "engaged in the business of making a consumer product directly or indirectly available to consumers." 15 U.S.C. § 2301(4).

80.    NRG and Spruce are "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act because they are suppliers who "gives or offers a written warranty." 15 U.S.C. § 2301(5).

81.    The warranties that NRG and Spruce provided the Keemes are "written warrant[ies]" within the meaning of the Magnuson-Moss Warranty Act because they are "undertaking[s] in writing in connection with the sale by a supplier of a commercial product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking," and because they are "part of the basis of the bargain between [NRG and

Spruce] and [the Keemes] for purposes other than the resale" of the solar energy system. 15 U.S.C. § 2301(6)(B).

82.    NRG and Spruce gave the Keemes written warranties and implied warranties of merchantability and fitness for a particular purpose as part of their lease of the solar energy system.

83.    NRG and Spruce breached the written warranties and the implied warranties of merchantability and fitness for a particular purpose as set forth above and consequently violated the Magnuson-Moss Warranty Act, which entitles the Keemes to recover their attorneys' fees and costs, as well as any other damages that are recoverable. 15 U.S.C. § 2310(d)(1), (2).

84.    NRG and Spruce's breaches proximately caused damage to the Keemes, including by causing them to incur additional expenses for their home energy needs and causing damage to their home.

**SIXTH CAUSE OF ACTION – VIOLATION OF CAL. BUS. & PROFS. CODE § 7160**

85.    California Business and Professions Code § 7160 provides: "Any person who is induced to contract for a work of improvement, including but not limited to a home improvement, in reliance on false or fraudulent representations or false statements knowingly made, may sue and recover from such contractor or solicitor a penalty of five hundred dollars ($500), plus reasonable attorney's fees, in addition to any damages sustained by their by reason of such statements or representations made by the contractor or solicitor."

86.    California Business and Professions Code § 7151(a) defines "home improvement" as including "the construction, erection, installation, replacement, or improvement of . . . solar energy systems . . . ."

87.    California Business and Professions Code § 7151(c) provides: "For purposes of this article, 'solar energy system' means a solar energy device to be installed on a residential building or residential property that has the primary purpose of providing for the collection and distribution of solar energy for the generation of electricity, that produces

at least one kilowatt, and not more than five megawatts, alternating current rated peak electricity, and that meets or exceeds the eligibility criteria established pursuant to Section 25782 of the Public Resources Code."

88.    The installation of the Keemes' solar energy system was a "work of improvement" under California Business and Professions Code § 7160.

89.    The Keemes were induced to contract for that work of improvement by NRG's false statements concerning the guarantees of production and the efforts NRG would undertake in connection with the maintaining the solar energy system and the Keemes' property.

90.    NRG and Spruce's failure to honor their obligations to the Keemes under the Solar Agreement suggests that at the time it made representations to the Keemes concerning the quality of its installation of the solar energy system, the amount of energy that the Keemes' system would produce, and the remedies that the Keemes had if the system did not produce the specified amount of energy, NRG and Spruce knew, or should have known, that the statements concerning the installation and operation of the System, and the Keemes' rights and remedies under the Solar Agreement were false.

91.    Under California Business and Professions Code § 7160, NRG and Spruce are liable to Ms. the Keemes for $500 plus damages and reasonable attorneys' fees.

### SEVENTH CAUSE OF ACTION – VIOLATION OF UNFAIR COMPETITION LAW

92.    As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendant NRG and Spruces conduct.

93.    The Unfair Competition Law, Business & Professions Code § 17200, et seq. ("UCL") prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

94.    Defendants NRG and Spruce committed myriad "unfair" and "fraudulent" acts or practices by, among other things: (i) advertising a warranty that they would not

honor, (ii) promising the Keemes a Performance Credit that they would not honor, (iii) failing to repair the Keemes' solar energy system in a timely fashion, and (iv) using poor workmanship to repair the Keemes' panels.

95.   NRG and Spruce's conduct also amount to "unfair" business acts or practices by: (i) engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to the Keemes; (ii) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to the Keemes; and (iii) engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws.

96.   There is no utility in a business making false, deceptive, and misleading representations to concerning warranties or for performing shoddy repair work. By contrast, the harm to the Keemes by this conduct is significant as they have suffered significant roof damage and paid significant energy bills while NRG and Spruce delayed essential repairs to their solar energy system.

97.   NRG and Spruce's conduct as described herein offends established public policies and their conduct as described herein is unethical, oppressive, and unscrupulous, as well as substantially injurious to Plaintiffs and other consumers.

98.   NRG and Spruce were aware that their representations to the Keemes were false, deceptive, and misleading, and NRG and Spruce had an improper motive in making these false, deceptive, and misleading representations to the Keemes insofar as such representations were motivated by their desire to profit off the lease of new solar panels and avoid honoring their warranty.

99.   NRG and Spruce had reasonable alternatives to further their legitimate business interests other than the conduct described herein. For example, NRG and Spruce could have removed the false and misleading representations that it would offer provide the Keemes with a Performance Credit if the solar energy system did not meet the Performance Guarantee and promise to protect the Keemes' roof and property in the Solar Agreement.

100.   As a direct and proximate result of NRG and Spruce's violations of the UCL, the Keemes suffered injury in fact and lost money. The Keemes reasonably relied on NRG and Spruce's false, deceptive, and misleading representations regarding their warranty and warranty services. The Keemes leased solar panels from NRG and Spruce in reliance of these false, deceptive, and misleading representations, and they would not have leased the panels or would have paid less for them had they been aware that these representations were false, deceptive, and misleading. The Keemes ended up leasing solar panels that were priced above fair market value, inaccurately marketed, and lacking the characteristic, quality, and value promised by NRG and Spruce, and the Keemes therefore suffered injury in fact.

101.   NRG and Spruce's representations were material to the Keemes' decision to lease solar panels, installation services and the accompanying warranty, and a reasonable person would have attached importance to the truth or falsity of the representations made by NRG in determining whether to lease the panels and other services.

102.   NRG and Spruce omitted material information in their representations to the Keemes, including that NRG and Spruce would not honor the warranty or would attempt to apply limitations that were not described in the contract or advertising materials. These omissions were material, and the Keemes would have behaved differently if the information had been disclosed. Had NRG disclosed the omitted information, the Keemes would not have leased the solar panels and accompanying services or would have paid much less for them than they did.

103.   As a consumer of NRG and Spruce's panels and installation and warranty services, the Keemes suffered injury in fact and lost money as a result of this unfair and fraudulent conduct. The Keemes therefore are entitled to bring this action and seek all available remedies under the UCL.

**EIGHTH CAUSE OF ACTION – VIOLATION OF FALSE ADVERTISING LAW**

104.   Pursuant to California's False Advertising Law ("FAL"), it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the

exercise of reasonable care should be known, to be untrue or misleading . . . [or] to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

105.   NRG and Spruce violated the FAL in particular as described herein through its false, deceptive, and misleading representations regarding the solar panels it sold and its installation and warranty services.

106.   NRG and Spruce misled the Keemes by making false, deceptive, and misleading representations about the solar panels and its installation and warranty services.

107.   As set forth above NRG and Spruce misled the Keemes by omitting material information that they was under a duty to disclose to them in connection with the lease of the solar energy system.

108.   NRG and Spruce knew, or by the exercise of reasonable care should have known, that their representations and omissions were false, deceptive, and misleading, and they deliberately made the aforementioned representations and omissions to deceive reasonable consumers like the Keemes.

109.   As a direct and proximate result of NRG and Spruce's violations of the FAL, the Keemes suffered injury in fact and lost money. The Keemes reasonably relied on NRG and Spruce's false, deceptive, and misleading representations regarding its solar panels and the accompanying warranty and Performance Guarantee. The Keemes leased the solar panels and accompanying warranty in reliance on these false, deceptive, and misleading representations, and they would not have leased the panels and warranty or would have paid less for them had they been aware that these representations were false, deceptive, and misleading. The Keemes ended up leasing solar panels with a warranty that were overpriced, inaccurately marketed, and lacking the characteristic, quality, and value promised by NRG and Spruce, and the Keemes therefore suffered injury in fact.

110.   NRG and Spruce's representations were material to the Keemes' decision to lease the solar panels and the accompanying warranty, and a reasonable person would have

attached importance to the truth or falsity of the representations made by NRG and Spruce in determining whether to lease them. With respect to the omissions by NRG and Spruce as described herein, those omissions were material, and the Keemes would have behaved differently if the information had been disclosed. Had NRG and Spruce disclosed the omitted information, the Keemes would not have leased the panels and warranty or would have paid much less for them than they actually did.

111.   NRG and Spruce advertised to the Keemes through written representations and omissions made by it and its employees that the solar panels and accompanying warranty would be of a particular nature and quality.

112.   The misleading and false advertising described herein presents a continuing threat to the Keemes in that Spruce persists and continues to engage in these practices. The Keemes are entitled to such portion of NRG and Spruce's revenues associated with their false, deceptive, and misleading advertising or such portion of those revenues as the Court may find equitable.

### NINTH CAUSE OF ACTION – VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT

113.   California's Consumer Legal Remedies Act ("CLRA") prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

114.   NRG and Spruce violated California Civil Code § 1770(a)(5), which prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have," by falsely representing that after leasing the solar energy system, the solar panels installed on the Keemes' home would produce electricity in line with the Performance Guarantee or the Keemes' would obtain the Performance Credit.

115.   NRG and Spruce violated California Civil Code § 1770(a)(5) by falsely representing that NRG and Spruce would warrant against damage to the Keemes' property, and belongings during the twenty-year term of the solar panel lease.

116. NRG and Spruce violated California Civil Code § 1770(a)(5) by falsely representing that NRG and Spruce would warrant against damage to the Keemes' roof for one year after the removal of the panels.

117. NRG and Spruce violated California Civil Code § 1770(a)(7), which prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," by falsely representing that after leasing the solar energy system, the solar panels installed on the Keemes' home would produce electricity in line with the Performance Guarantee or the Keemes' would obtain the Performance Credit.

118. NRG and Spruce violated California Civil Code § 1770(a)(7) by falsely representing that NRG and Spruce would warrant against damage to the Keemes' property, and belongings during the twenty-year term of the solar panel lease.

119. NRG and Spruce violated California Civil Code § 1770(a)(7) by falsely representing that NRG and Spruce would warrant against damage to the Keemes' roof for one year after the removal of the panels.

120. NRG and Spruce violated California Civil Code § 1770(a)(14), which prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve," by falsely representing that the Solar Agreement conferred a right either to the rate of electricity set forth in the Performance Guarantee or a corresponding Performance Credit.

121. NRG and Spruce violated California Civil Code § 1770(a)(14), which prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve," by falsely representing that the Solar Agreement conferred warranty rights that NRG and Spruce did not honor.

122. NRG and Spruce violated California Civil Code § 1770(a)(16), which prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not," by falsely representing that NRG and Spruce's warranties were honored when they were not.

123.   NRG and Spruce continue to profit from the lease of the solar panels and accompanying warranty to the Keemes using the above false, deceptive, and unlawful means.

124.   The Keemes leased the solar panels and accompanying warranty for personal use in reliance on NRG and Spruce's false, deceptive, and misleading advertising for the solar panels and warranty as described herein.

125.   The Keemes' counsel sent NRG and Spruce a letter notifying them of the above CLRA violation more than thirty days before the filing of an action via certified mail, return receipt requested.  The letter demanded that NRG and Spruce cure its violations.

126.   As a direct and proximate result of NRG and Spruce's violations of the CLRA, the Keemes seek to recover their attorneys' fees and costs.

127.   The Keemes notified NRG and Spruce of their violations of the CLRA and demanded that it remedy these violations more than thirty days before commencing this action.  As such, the Keemes can seek to recover their damages under the CLRA.

128.   As a direct and proximate result of NRG and Spruce's violations of the CLRA, the Keemes suffered injury in fact and lost money. The Keemes reasonably relied on NRG and Spruce's false, deceptive, and misleading representations. The Keemes leased the solar panels and accompanying warranty in reliance on these false, deceptive, and misleading representations, and they would not have leased the panels and warranty or would have paid less for them had they been aware that these representations were false, deceptive, and misleading. The Keemes ended up leasing solar panels and a warranty that were overpriced, inaccurately marketed, and lacking the characteristic, quality, and value promised by NRG and Spruce, and the Keemes therefore suffered injury in fact. Pursuant to California Civil Code § 1780, the Keemes seek actual damages, restitution of property, punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper.

### TENTH CAUSE OF ACTION – NEGLIGENT HIRING

129.   NRG and Spruce had a duty to select contractors to perform installation and

repair of the Keemes' solar energy system.

130.    NRG and Spruce breached that duty by selecting negligently a contractor who was not sufficiently skilled to remove and reinstall the solar energy system in 2021.

131.    NRG and Spruce's negligence is demonstrated by the deficient workmanship on their roof by the contractor that they hand selected. For example, on information and belief, the contractor elected to repair rather than replace roof tiles that were damaged in the reinstallation of the Keemes' solar energy panels.

132.    The Keemes discovered NRG and Spruce's negligence in or around early-2023 when the damage to their roof became apparent.

133.    The damages to the Keemes' roof were proximately caused by NRG and Spruce's negligent hiring of contractors who were not sufficiently skilled to perform the repair and reinstallation of the solar energy system.

134.    The Keemes suffered damages to their roof following the repair and reinstallation of the solar energy panels as set forth above.

### PRAYER FOR RELIEF

Marko and Terri Keeme seek the following relief from the Court:

A.    Damages for NRG and Spruce's breaches of contract and warranty and negligent hiring in an amount to be shown at an evidentiary hearing.

B.    Damages stemming from NRG and Spruce's breach of the implied warranties of merchantability and fitness for a particular purpose. *See* Cal. Civ. Code § 1794(a).

C.    "[A] sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with" this action. *See* Cal. Civ. Code § 1794(d).

D.    Monetary and injunctive relief including actual, incidental, and consequential damages, costs, expenses, attorneys' fees, and any other relief determined appropriate. *See* 15 U.S.C. § 2310(d).

E.   $500 plus damages for the losses and injuries the Keemes have sustained because of their reliance on NRG and Spruce's knowingly made false or fraudulent representations, such damages to include both the financial losses the Keemes have suffered and the aggravation, inconvenience, and emotional distress she has experienced as result of NRG and Spruce's unlawful conduct. *See* Cal. Bus. & Prof. Code § 7160.

F.   Reasonable attorneys' fees. *See* Cal. Bus. & Prof. Code § 7160.

G.   Actual damages and consequential damages stemming from NRG and Spruce's fraud and fraudulent concealment, including damages for the distress, aggravation, and inconvenience the Keemes have suffered.

H.   Punitive damages of no less than $50,000 for NRG and Spruce's fraud and fraudulent concealment and violations of the CLRA. *See* Cal. Civ. Code § 1780(a)(4).

I.   Restitution of the entirety of NRG and Spruce's revenues associated with its unfair acts and practices, or such portion of those revenues as the Court may find equitable. *See* Cal. Bus. & Prof. Code § 17203.

J.   Restitution of the monies the Keemes have paid to NRG and Spruce in connection with the Solar Agreement.

K.   Damages the Keemes suffered as a result of NRG and Spruce's employment of practices and acts that violate the CLRA in an amount to be shown at the evidentiary hearing. *See* Cal. Civ. Code § 1780(a)(1).

L.   Costs and expenses associated with this action; and

M.   Such other relief as the Court may deem just and proper.

Respectfully submitted,

**KNEUPPER & COVEY, PC**
17011 Beach Blvd, Suite 900
Huntington Beach, CA 92647
t: (657) 845-3100
f: (855) 596-3707

Kevin Kneupper
California Bar No. 325413
kevin@kneuppercovey.com
*Counsel for Plaintiffs Marko Keeme and Tari Keeme*

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. Proc. 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated this 25th day of March, 2024

/s/ Kevin Kneupper

Kevin Kneupper
*Attorney for Plaintiffs*